Williams, C. J.,
(dissenting.) I am unable to concur in the foregoing decision.
The argument of the majority opinion culminates in the conclusion that the last clause of section 1464, of the Revised Statutes, must be read- as follows: “ nor shall any land be devoted to cemetery purposes lying within two hundred yards of a dwelling-house.” This reading of the statute, not only ignores a part of its language, but is at variance with its plain terms. The section expressly provides two modes of acquiring lands, by the trustees of a township, for cemetery purposes; one by purchase or donation, and the other by-appropriation proceedings. The former is accomplished with the consent of the owner, the latter without his consent. The power of the trustees to acquire lands’for such purpose, by purchase or donation, is conferred by the first *679 clause of the section, in the following language: “ The trustees may accept a conveyance of, or purchase, inclose, improve, and protect such lands, in one or more places within the township, as they deem necessary and proper for cemetery purposes.” It will be noticed that there is no limitation upon the power of the trustees, under this clause, to purchase, or accept a conveyance of such lands, either as to the quantity of the land, or as to its condition, location or situation, except that it must be within the township. In the purchase of lands for cemetery purposes, as well as in the acceptance of a conveyance of land for such purpose, within their township, the trustees are left to the free exercise of their best judgment, concerning the quantity necessary and proper, and the location and situation thereof. They are authorized, in the language of the statute, to thus acquire “ such lands in one or more places within the township, as they deem necessary and proper.” It is evident that the remainder of the section, that is, all of it except the first clause, relates entirely to the appropriation of private property, for cemetery purposes, by legal proceedings on the part of the trustees. Its language is, “ and if suitable lands cannot be procured by contract on reasonable terms, they (the trustees) may appropriate lands therefor, not exceeding ten acres, by proceedings in accordance with the provisions of law regulating the appropriation of private property by municipal corporations; but no such appropriation shall be made until the court is satisfied that such lands cannot be obtained by contract on reasonable terms, nor shall any lands be-so appropriated on which there is any house, barn, stable or other building, or any orchard, nursery, medicinal or mineral spring, or well yielding oil or salt water; nor shall any land be so appropriated within two hundred yards of a dwelling-house.”
The power of appropriation by legal proceedings, conferred on the trustees by this section, is subject to three clearly defined restrictions or qualifications; one of which, limits the quantity of land that may be so appropriated, to ten acres; another, exempts from such appropriation, lands on *680 which there is a house, barn, stable, or other building, or an orchard, nursery, medicinal or mineral spring, or well yielding oil or salt water; and the only other one, is that contained in the last clause of the section, which prohibits the taking of lands by such an appropriation, which lie within two hundred yards of a dwelling-house. All of them, it is manifest upon the reading of the section, are merely limitations upon the exercise, by the trustees, of the power of eminent domain. They neither have any application to the first clause of the section, nor in any way limit, or affect the authority conferred by it on the township trustees, to “ accept a conveyance of, or purchase, inclose, improve and protect such lands, in one or more places within the township, as they deem necessary and proper ” for cemetery purposes. It is not claimed that the trustees may not, in the proper exercise of the power conferred on them by the first clause of the section, purchase and use for a cemetery, more than ten acres of ground; and it is conceded that they may so acquire and use any lands on which there is a house, or other building, orchard, nursery, spring, or well yielding oil or salt water. To sustain the decision announced in the case, it becomes necessary, therefore, to hold that the phrase “so ■appropriated,” in the last clause of the section, means “ devoted to the uses of a cemetery,” and does not refer to an appropriation by legal proceedings. In my opinion, the reading of the section shows, that this is a strained and far fetched conclusion. I do not doubt that the word “appropriate,” when used in certain connections, may mean “to apply or devote to ; ” but obviously it was not used in that .sense in the clause under consideration. It is there qualified by the word “so,” and the phrase “so appropriated,” refers to a mode or manner of appropriation previously specified or described; and by reference to a previous clause of the same section, it will be seen, that there, a particular mode of appropriation is specified, namely, an appropriation of private property for a public use by proceedings in accordance with the provisions of law regulating the appropriation of private property by municipal corporations. In the sub *681 sequent clauses of the section, instead of repeating specifically the character or manner of the appropriation, it is referred to by the phrase “ so appropriated.” It is admitted that this is so, in the clause next preceding the last one in the section. That clause reads, “ nor shall any lands be so appropriated on which there is any house,” etc. There can be no question that the phrase “ so appropriated,” in that clause, refers to the appropriation by legal proceedings as specified in the preceding clause. That it does so, the learned judge who wrote the majority opinion, admits. And jret, it no more certainly refers to the appropriation by legal proceedings, specified in the previous clause of the section, than does the same phrase, “ so appropriated,” in the last clause of the section. There is nothing in the context, which gives to the same phrase in the different clauses of the same section, different meanings. If the legislature had intended to prohibit the use, for a cemetery, of lands acquired by the trustees under the first clause- of the section, that were within two hundred yards of a dwelling-house, it was easy to express that intention in plain terms. But no such intention is expressed. In the enactment' of the section, the legislature had before it the subject of the appropriation of private property for the public use of a cemetery, by legal proceedings, as distinguished from the acquisition of property for such a purpose by purchase or donation; and by the section, the authority to appropriate lands for such purpose, by the exercise of the power of eminent domain, is conferred on the township trustees, subject to certain limitations therein prescribed, one of which, as before stated, is that lands shall not be “ so appropriated ” within two hundred yards of a dwelling-house. It is difficult to see how clearer, or more apt language, could have been employed to express that legislative intent. It could not have been more clearly and certainly expressed, if, instead of the words “ so appropriated,” the language in the last clause had been, “ appropriated as aforesaid,” or “ appropriated in the manner aforesaid,” or “ appropriated by proceedings in accordance with the provisions of law, regulating the appropriation of private property' by municipal corpora *682 tions.” The phrase “so appropriated,” is equivalent to a repetition of the previously specified manner of appropriation, and excludes the meaning attempted to be given to it by the majority opinion, which seems to overlook, or disregards the effect of the qualifying word “ so,” in that phrase. This appears so obvious that it is sought to justify the conclusion of the majority of the court, that the phrase in question should be read as if it were written, “ nor shall any land be devoted to cemetery purposes lying within two hundred yards of a dwelling-house,” upon the supposition, that to give effect to the clear and unambiguous language of the section, makes the act inconsistent, unreasonable, and in conflict with its object 'and policy; while the language which the majority would substitute for that contained in the section, it is claimed, makes the statute harmonious, and conforms it to the intention of the legislature in enacting it.
Speculations may be indulged in, like those advanced in the majority opinion, concerning a supposed legislative intention which is not expressed in the statute; but they are mere conjectures which, in order to sustain them, or give them plausibility, require the radical change in the language of the section, already referred to. This is not construction, but reconstruction, which is the province of the law-making power, and not of the courts. It is undoubtedly true, that if the language of a statute is fairly susceptible of more than one interpretation, that construction will be given it which will best effectuate the intention and purpose of its enactment, as ascertained from the whole statute. But courts “ must not, even in order to give effect to what they may suppose to be the intention of the legislature, put upon the provision of a statute a construction not supported by its words, even although the consequences should be to defeat the object of the act.” Smith on Statutory Construction, sec. 714. “ Where a law is plain and unambiguous, whether it be expressed in general or limited terms, the legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction.” Sedgwick on Statutory and Constitutional Law, 195. Story, J., *683 in Gardner v. Collins, 2 Peters R. 93, states the rule which should guide in the construction of statutes as follows:
“ What the legislative intent was, can be derived only from the words they have used; and we cannot speculate beyond the reasonable import of these words. The spirit of the act must be extracted from the words of the act, and not from conjectui’e.”
In the Last Will of Hathaway, 4 Ohio St. 385, it is said, “ a court is not allowed to make an interpretation contrary to the plain and express letter of the law.” And this court held, in Woodbury v. Berry, 18 Ohio St., 456, that “ Where the words of a statute are plain, explicit and unequivocal, a court is not warranted in departing from their obvious meaning, although from considerations arising outside of the language of the statute, it may be convinced that the legislature intended to enact something different from what it did in fact enact.”
The argument in support of the conclusion arrived at by the majority opinion is, that it was the purpose of the act to prohibit the location of a cemetery nearer to a dwelling-house than two hundred yards, because the last clause of the section prohibits the trustees from condemning property for such purpose, which lies within that distance of such a house, which, it is contended, is inconsistent with the power to acquire lands for a cemetery that are within two hundred yards of a dwelling, when the trustees are acting under their general authority, conferred by the first clause of the section, to accept a conveyance of, or purchase such land as they deem necessary and proper for such purpose. The argument admits that the appropriation referred to in the last clause, is an appropriation by condemnation proceedings; and that meaning is relied on to raise the supposed inconsistency in the statute; and then, the inconsistency, so raised, is used to show that the language of that clause should not receive that, but an entirely different meaning. But, if because the trustees are prohibited from condemning lands within the specified distance of a dwelling, they are also prohibited from locating a cemetery within that distance, it must follow, that *684 since they are authorized to condemn immediately outside of such limit, they are also authorized to locate a cemetery there ; and if so authorized, however injurious it may be, or become, to the owner of the dwelling, or its occupants, neither would have any remedy to prevent it. It may occur, that owing to the condition and location of the land used for cemetery purposes, and that of the dwelling, the cemetery, though more than two hundred yards from the house, would produce great injury to the owner, while a situation might easily be selected which, though within less than the distance named of the house, would cause no damage or injury whatever. Under the construction given the clause, to prevent the act which causes no injury, the owner of the dwelling may have an injunction ; but to prevent the one which does him real injury, he may have none. The truth is, the section does not attempt to prescribe where the trustees may, or may not locate a cemetery within their township, or control their action in that respect, when acting under the first clause, but it does place limitations upon their power to condemn property for cemetery purposes, by legal proceedings, when acting under the subsequent clauses; neither of which clauses makes it unlawful for them to acquire by purchase or donation, land for such purpose, though a dwelling-house may be within two hundred yards of it.
Regarding the clause in question as simply a limitation on the exercise by the trustees of the power of eminent domain, and allowing the language to have effect according to its plain terms and import, protection from actual injury will be fully afforded the owners of property lying adjacent to lands selected for cemetery purposes. In the case before us, the circuit court heard the evidence, and found, that in view of the condition and location of the land which the defendants in error had obtained for the cemetery, and the location of the house of the plaintiff in error with respect to it, no injury could result to the plaintiff from the location of the cemetery as made; and to that finding he took no exception, and makes no complaint conceiming it, here; so that, the judgment of this court, reversing that of the circuit court, *685 amounts to this; that the plaintiff in error, though sustaining no injury whatever, may by injunction prevent the use of the cemetery, located by the defendants in error, merely because some one of its boundary lines is, at some point, nearer than two hundred yards to the dwelling on his land; and he may do this, not because such use is a violation of the terms of the statute, but of a supposed legislative intention not expressed.